# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

SAMUEL WEAVER,                                      Case No. 1:11-cv-218
      Petitioner,

      vs.                                           Barrett, J.
                                                    Wehrman, M.J.

WARDEN, LEBANON                                     **REPORT AND**
CORRECTIONAL INSTITUTION,                           **RECOMMENDATION**
      Respondent.


Petitioner, an inmate in state custody at the Lebanon Correctional Institution, has filed a

pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before

the Court on the petition, respondent's return of writ, and petitioner's reply. (Docs. 1, 9, 13).

## I. FACTUAL BACKGROUND

The Ohio Court of Appeals, Twelfth Appellate District, provided the following summary

of the facts that led to petitioner's conviction and sentence:[1]

> {¶2} In April 2007, Michella Eldridge held a yard sale at her home in Hamilton,
> Ohio. Appellant came to the sale, and at trial, Eldridge testified that she
> remembered he had driven a white minivan with a steering wheel that had a cover
> with cherries on it. Eldridge also remembered that he arrived at her yard sale with
> a female and small child who remained in the vehicle. At the yard sale, appellant
> showed interest in a handgun that Eldridge's husband was showing to his father.
> Although he did not purchase anything at that time, appellant returned later that
> day and bought a pair of "Ninja" swords.

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by
a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State
court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."
Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals'
factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v.
Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

{¶3}  Approximately a week after the yard sale, appellant returned to Eldridge's house in the white minivan and arrived just as she was cleaning up after another yard sale.  Before leaving, appellant purchased a plant from Eldridge.

{¶4}  On May 19, 2007, Eldridge was at home with her daughters when she heard the doorbell ring.  She went to the back door and saw appellant.  Appellant asked her whether she still had the gun he saw at the yard sale.  When Eldridge told him she no longer had the gun, he asked her whether she had any other "firearms." Eldridge explained that they had a "Tech 9," but that she was not sure her husband wanted to sell it.  Appellant then asked if he could see the gun and told her that he would get the money to purchase it.

{¶5}  Eldridge told appellant to wait outside, and she pushed the back door almost completely closed.  She then went through the house and retrieved the gun from a dresser.  She placed the gun on her dining room table.  She did not notice appellant was in the room until he reached across her and grabbed the weapon. As Eldridge pleaded with appellant to give the gun back to her, he struck her on the head with the butt of the gun.

{¶6}  Appellant smiled after hitting Eldridge the first time and started for the back door, but Eldridge followed him.  As she was asking for the gun, appellant's arm went up to strike her a second time, and Eldridge hit him in the face.  He then hit her in the head again with the butt of the gun.  Eldridge testified that the blow "dazed" her and "kind of put [her] out." Appellant then took off out the back door.  Eldridge testified that she "shook it off" and chased after appellant.

{¶7}  Eldridge caught appellant and grabbed his shirt.  She testified that he exclaimed, "Let go of me you fucking bitch," and he struck her in the head with the butt of the gun three more times.  Eldridge was bleeding, and appellant fled. She called 9-1-1 and was taken to the hospital, where she received 28 stitches in her head for a wound deep enough to expose her skull.

(Doc. 9, Ex. 11, pp. 1-3).

## II.  PROCEDURAL HISTORY

### State Trial and Appellate Court Proceedings

On April 16, 2008, the Butler County, Ohio grand jury returned an indictment charging

petitioner with one count of aggravated robbery, in violation of Ohio Rev. Code §

2911.01(A)(1); one count of aggravated burglary, in violation of Ohio Rev. Code §

2911.11(A)(1); one count of felonious assault, in violation of Ohio Rev. Code § 2903.11(A)(2); and one count of grand theft, in violation of Ohio Rev. Code § 2913.02. (Doc. 9, Ex. 1). The counts of aggravated robbery, aggravated burglary and felonious assault all included firearm specifications. Petitioner entered a not guilty plea to all charges.

On September 5, 2008, after a jury trial, petitioner was found guilty of all charges. (Doc. 9, Ex. 2). Petitioner filed a motion for a new trial on December 3, 2008. (Doc. 9, Ex. 3). On December 30, 2008, the trial court denied petitioner's motion. (Doc. 9, Ex. 5). On the same day, petitioner was sentenced to six years for the aggravated robbery conviction, plus an additional three years for the firearm specification; five years for the felonious assault conviction, plus three years for the firearm specification; and four years for the grand theft conviction. (Doc. 9, Ex. 6).

Through different counsel, petitioner filed a notice of appeal to the Ohio Court of Appeals on January 27, 2009. (Doc. 9, Ex. 7). Petitioner raised five assignments of error for review and argument:

1. An indictment for robbery which does not contain a *mens rea* element for the commission of that crime is defective and constitutes structural error when the defendant is never placed on notice of the proper *mens rea* element and the trial court fails to provide that proper element in its jury instructions.

2. The trial court erred to the prejudice of defendant-appellant when it replayed the testimony of the victim for the jury.

3. The trial court erred to the prejudice of defendant-appellant when it allowed the state to present rebuttal evidence which had not been disclosed in discovery.

4. The trial court erred to the prejudice of defendant-appellant when it overruled his motion for a new trial.

5. The trial court erred to the prejudice of defendant-appellant when it imposed two consecutive sentences of three years each for the gun

specifications relating to the aggravated robbery and to the felonious assault.

(Doc. 9, Ex. 8). On November 9, 2009, the Ohio Court of Appeals affirmed the judgment of the

trial court. (Doc. 9, Ex. 11).

**Ohio Supreme Court**

On December 23, 2009, petitioner filed a pro se notice of appeal to the Ohio Supreme

Court. (Doc. 9, Ex. 12). In his memorandum in support of jurisdiction, petitioner raised four

propositions of law:

1. The State failed to include Mens-Rea element in indictment which is a structural error, resulting in a violation of the Due Process Clause of the U.S. and Ohio Constitution 14th Amendment Equivalent Ohio Constitution.

2. The Trial Court abused its discretion by repeatedly playing a tape of the victim's testimony for the Jury in violation of the Due Process Clause of both U.S. Constitution 14th and Ohio Constitution.

3. The Trial Court violated Appellants Due Process Right under both the 14th Amendment of the U.S. Constitution and the Due Process Clause of the Ohio Constitution by allowing the Prosecutor to use evidence and witness testimony not properly put into discovery in violation of Crim. Rule 16.1.

4. Defendant's Due Process Rights under both the U.S. Constitution an[d] Ohio Constitution were violated by the Trial Court['s] refusal to grant a new trial motion or at least conduct a full hearing on the motion, rather than the mere cursive look taken by the Court prior to over-ruling the motion, Defendant was deprive of Due process and a fair trial.

(Doc. 9, Ex. 13). On March 10, 2010, the Ohio Supreme Court denied leave to appeal and

dismissed the appeal "as not involving any substantial constitutional question." (Doc. 9, Ex. 14).

**State Post-Conviction Petition**

On February 3, 2010, petitioner filed a pro se application to reopen his direct appeal,

pursuant to Ohio App. R. 26(B). (Doc. 9, Ex. 15). Therein, petitioner argued that his appellate

attorney was ineffective for failing to raise the following assignments of error:

1. When prosecutor & police withhold evidence "brady material" defendant is denied due process under the 14th Amend and is denied a fair trial.

2. When defense counsel's performance falls below the standard of reasonableness the defendant is denied a fair trial under the 6th & 14 Amends U.S. Const.

3. Prosecutor's improper comments rose to the level of constitutional violation and resulted in denial of due process as required by 14th Amend.

4. The evidence presented was insufficient to support a conviction in violation of due process guaranteed in the 14th Amend.

(Doc. 9, Ex. 15, p. 2). On June 24, 2010, the Ohio Court of Appeals denied petitioner's

application to reopen. (Doc. 9, Ex. 17).

Petitioner did not appeal the denial of his application to reopen to the Ohio Supreme

Court.

## Federal Habeas Corpus

Petitioner commenced the instant federal habeas corpus action on April 13, 2011. (Doc.

1). Petitioner raises nine grounds for relief in his petition:

**GROUND ONE**: DEFECTIVE INDICTMENT

**Supporting Facts**: Indictment did not contain all of the essential elements (mens rea) as such did not charge an offense violating 5th, 6th and 14th amendments.

**GROUND TWO**: IMPROPER ADMISSION OF EVIDENCE

**Supporting Facts**: The trial court repeatedly allowed a tape of the victim's testimony to be played during deliberation causing prejudice to the petitioner in violation of a fair trial and Du[e] Process 14th amendment.

**GROUND THREE**: PROSECUTORIAL MISCONDUCT

**Supporting Facts**: The Prosecutor, with the permission of the court introduced evidence and witness testimony not put into the discovery violating Crim. R. 16.1 and 14th amendment Due Process.

**GROUND FOUR**: TRIAL COURT REFUSED TO GRANT NEW TRIAL MOTION AND CONDUCT HEARING.

**Supporting Facts**: Despite substantial grounds the trial court denied petitioner motion for a new trial with no consideration hearing of finding of facts violating 14th amendment.

**GROUND FIVE**: PROSECUTOR WITHELD EXCULPATORY EVIDENCE IN VIOLATION OF BRADY.

**Supporting Facts**:
A) Prosecutor did not reveal that the gun in which the entire case centers around was found in possession of another African/American in a completely different jurisdiction with no relationship to the petitioner and most likely is the real perpetrator. This violates his 14th amendment right to Due Process of law.

B) Clerk of Courts for the 12th District did not notify petitioner of the Court of Appeals decision in a timely manner causing him to miss the 45 day filing deadline. See attached letter. The Ohio Supreme Court Clerk will not file an untimely 26B application appeal for any reason.

**GROUND SIX**: INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

**Supporting Facts**:
A) Trial Counsel admitted he was inexperienced, failed to object to improper comments, failed to make Rule 29 motion for acquittal, failed to investigate exculpatory evidence, failed to object to a picture of a gun as evidence or to investigate what happened to the real gun.

B) Clerk of Courts for the 12th District did not notify petitioner of the Court of Appeals decision in a timely manner causing him to miss the 45 day filing deadline. See attached letter. The Ohio Supreme Court Clerk will not file an untimely 26B application appeal for any reason.

**GROUND SEVEN**: PROSECUTORIAL MISCONDUCT.

**Supporting Facts**:
A) Improper comments by the prosecutor insinuating the petitioner was in some street gang called "D-Block" killers rose to the level of a due process violation since these comments were specifically aimed at prejudicing the petitioner in the

eyes of the jury and it was not proven he if at all was involved or associated with this alleged gang. Thus the petitioner's right to a fair trial and due process of law were violated. 14th Amend.

B) Clerk of Courts for the 12th District did not notify petitioner of the Court of Appeals decision in a timely manner causing him to miss the 45 day filing deadline. See attached letter. The Ohio Supreme Court Clerk will not file untimely appeals of applications to re-open under 26B.

**GROUND EIGHT**: SUFFICIENCY OF THE EVIDENCE

**Supporting Facts**:
A) The alleged victim could not identify the petitioner in a "Drive by" ID, a Photo line-up or at any time prior to trial when the petitioner was sitting in the Defendant's chair. No actual evidence exists to support conviction. The lead Detective admitted he had another good suspect but did not investigate that suspect. All of which violates the petitioner's right to a fair trial and the due process of law. 14th Amend.

B) Clerk of the 12th District Court of Appeals did not notify the petitioner in a timely manner making him late to file in the required 45 day filing deadline. See attached letter. The Ohio Supreme Court Clerk will not file untimely 26 B application appeals.

**GROUND NINE**: INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

**Supporting Facts**:
A) Appellate counsel failed to raise the strongest arguments and issues on Direct Appeal. To wit: four claims raised by petitioner in his application to re-open. This failure violated the petitioner's rights under the 5th, 6th and 14th amend.

B) Clerk of Court for the 12th District Court of Appeals failed to notify petitioner in a timely manner or the Court's decision making him late to file to the Ohio Supreme Court which has a 45 day filing deadline. See attached letter. Ohio Supreme Court Clerk will not file any untimely appeals of application to re-open pursuant to App. R. 26 B.

(Doc. 1).

Respondent opposes the petition. (Doc. 9). In the return of writ, respondent contends that Grounds One through Four are not cognizable in federal habeas corpus; that Grounds Five through Eight are procedurally defaulted; and Ground Nine is meritless. *Id.* at 11-12.

**III. THE PETITION SHOULD BE DENIED**

In this federal habeas case, the applicable standard of review governing the adjudication of the constitutional claims that were raised to and decided by the Ohio courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit recently explained in *Otte*:

Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable.* . . . This is a "substantially higher threshold." . . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court recently made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher,* __ U.S. __, 132 S.Ct. 38, 44 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases

already decided at the time the state court made its decision"). In *Greene*, 132 S.Ct. at 44, the

Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'*" *Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] have already reviewed and

interpreted the relevant Supreme Court case law to determine whether a legal principle or right

had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v.

Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)). The writ may

issue only if the application of clearly-established federal law is objectively unreasonable "in

light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of

the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing

*Williams,* 529 U.S. at 412).

**A. Ground One is not cognizable on federal habeas corpus.**

In Ground One, petitioner contends that his Fifth, Sixth and Fourteenth Amendment

rights were violated because his indictment was defective. Petitioner bases his argument on the

fact that the indictment did not include a *mens rea* element for the count of Aggravated Robbery.

(Doc. 1, p. 6).

In addressing petitioner's defective indictment claim, the Ohio Court of Appeals

overruled his assignment of error as follows:

{¶9}  Assignment of Error No. 1:

{¶10}  "THE STATE PROCURED STRUCTURAL ERROR IN SEEKING AN INDICTMENT THAT DID NOT CONTAIN ALL THE ESSENTIAL ELEMENTS OF AGGRAVATED ROBBERY."

{¶11}  Appellant's first assignment of error relates to the indictment used to charge Weaver.  At oral argument, appellant expressed a desire to concede the issue, based on the supplemental authority submitted by the state:  *State v. Lester*, Slip Opinion No. 2009-Ohio-4225.  Accordingly, we overrule appellant's first assignment of error.

(Doc. 9, Ex. 11, p. 3).  In *State v. Lester*, 916 N.E.2d 1038 (Ohio 2009), the Ohio Supreme Court held that "the state is not required to charge a mens rea for [the element of displaying, brandishing, indicating possession of, or using a deadly weapon] of the crime of aggravated robbery under R.C. 2911.01(A)(1)."  *Lester*, 916 N.E.2d at 1044.  In any event, petitioner's claim attacking only the manner in which he was charged with a crime does not trigger federal constitutional concerns subject to review in this federal habeas proceeding.

It is well-settled that there is not even a federal constitutional right to an indictment in state criminal proceedings.  *Hurtado v. California,* 110 U.S. 516, 537-38 (1884); *see also Branzburg v. Hayes,* 408 U.S. 665, 688 n.25 (1972); *Koontz v. Glossa,* 731 F.2d 365, 369 (6th Cir. 1984) ("The law is well settled that the federal guarantee of a grand jury indictment has not been applied to the states. . . .  It is also well settled in this Circuit that the Constitution does not require any particular state indictment rule."); *Watson v. Jago,* 558 F.2d 330, 337 (6th Cir. 1977); *Fears v. Miller*, No. 1:09-cv-698, 2009 WL 6315341, at *9 (N.D. Ohio Dec. 1, 2009) (Report & Recommendation), *adopted,* 2010 WL 1258096 (N.D. Ohio Mar. 30, 2010); *Harsh v. Warden, Chillicothe Corr. Inst.*, No. 1:08-cv-433, 2009 WL 3378246, at *1, *20 (S.D. Ohio Oct. 15, 2009) (Beckwith, J.; Black, M.J.).  As long as "sufficient notice of the charges is given in

11

some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz,* 731 F.2d at 369; *Watson,* 558 F.2d at 338; *see also Williams v. Haviland,* 467 F.3d 527, 535 (6th Cir. 2006).

In this case, the undersigned is convinced that the indictment provided petitioner with sufficient notice of the charges against him to satisfy due process concerns. Accordingly, petitioner is not entitled to habeas relief based on Ground One of the petition.

**B. Grounds Two through Four are procedurally defaulted and waived.**

In Ground Two, petitioner argues that the trial court improperly admitted evidence when the court "repeatedly allowed a tape of the victim's testimony to be played during deliberation causing prejudice to the petitioner in violation of a fair trial and Du[e] Process." (Doc. 1, p. 8). In Ground Three, he contends that the prosecution's introduction of "evidence and witness testimony not put into the discovery violating Crim. R. 16.1 and 14th Amendment Due Process," constituted prosecutorial misconduct. *Id.* at 9. In Ground Four, petitioner argues that the trial court violated his due process rights by refusing to grant his motion for a new trial without a hearing. *Id.* at 11.

As an initial matter, to the extent that petitioner argues that a violations of state law justify habeas corpus relief, his contention is without merit because this Court is without jurisdiction to review issues of state law on federal habeas corpus review. This Court may grant a writ of habeas corpus only if petitioner, pursuant to the judgment of a State court, "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The federal courts may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735,

738 (6th Cir.1988). *See also Hicks v. Collins,* 384 F.3d 204, 220 (6th Cir. 2004) (alleged violation of Ohio Criminal Rule 16(B)(1)(a)(ii) not cognizable on habeas review).

Petitioner has waived any claim of constitutional error because he failed to fairly present his constitutional claims to the state courts. "Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *Fulcher v. Motley,* 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003)); *see also* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). Moreover, it is well-settled that in order to satisfy the "fair presentation" requirement, a habeas corpus petitioner must present both the factual and legal underpinnings of his claims to the state courts. *Fulcher,* 444 F.3d at 798; *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987).

A set of four guidelines has been developed for determining whether a claim was presented in such a way as to alert the state courts of the claim's federal nature. *McMeans,* 228 F.3d at 681. Under those guidelines, the fair presentation requirement is satisfied if the petitioner raised the federal issue in the state courts by (1) relying on federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in similar factual contexts; (3) phrasing the claim in terms of constitutional law or in terms sufficiently

particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Id.* (citing *Franklin*, 811 F.2d at 326).

In this case, petitioner failed to present the claims in Grounds Two through Four as constitutional issues on direct appeal. Instead, petitioner argued that the alleged errors each amounted to an abuse of discretion under state law. (*See* Doc. 9, Ex. 8). Petitioner did not rely on federal or state cases employing constitutional analysis, nor can the Court conclude that petitioner phrased his claim in terms of constitutional law or alleged facts well within the mainstream of constitutional law.

Petitioner did raise the claims in Grounds Two through Four in his memorandum in support of jurisdiction on further appeal to the Ohio Supreme Court. (*See* Doc. 9, Ex. 12). However, petitioner was unable to satisfy the "fair presentation" requirement at that late juncture because the Ohio Supreme Court lacked jurisdiction to consider the constitutional issue, which had not been raised to or considered by the intermediate appellate court. *See* Ohio Const. art. IV, § 2(B)(2); *State v. Jones,* 211 N.E.2d 198 (Ohio 1965); *see also Rigdon v. Ohio Adult Parole Authority,* No. 1:08-cv-716, 2010 WL 3910236, at *9 (S.D. Ohio July 7, 2010) (Wehrman, J.) (citing *Leroy,* 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982)), *adopted,* 2010 WL 3910230 (S.D. Ohio Oct. 4, 2010) (Dlott, J.); *Harsh v. Warden, Chillicothe Corr. Inst.,* No. 1:08-cv-433, 2009 WL 3378246, at *1, *9 n.8 (S.D. Ohio Oct. 15, 2009) (Beckwith, J.; Black, M.J.) (and cases cited therein).[2]

---

[2] *Cf. Mayes v. Hudson,* No. 1:07-cv-315, 2010 WL 55963, at *9 & n.1 (N.D. Ohio Jan. 4, 2010) (in holding that the petitioner's "failure to raise [a] ground for relief . . . in the state appellate court on direct appeal procedurally defaulted that claim," the district court noted: "Even if [the] memorandum in support of jurisdiction in the Ohio Supreme Court could be read as having raised the claim . . ., [the petitioner's] failure to raise that claim in the appellate court resulted in its default," because it must be assumed from the Ohio Supreme Court's silence as to the reasons for denying the claim that it did not "ignore its own procedural rules and . . . enforced the procedural bar"

Because petitioner failed to provide the state's highest court with an opportunity to correct the alleged violations of his constitutional rights, he procedurally defaulted and has waived the claims raised in Grounds Two through Four absent a showing of cause and prejudice for the default in the state courts, or that a fundamental miscarriage of justice will occur if the claim is not considered herein. *See, e.g., Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262. No such showing has been made in this case. Therefore, petitioner's claims in Grounds Two through Four are waived and barred from review in this federal habeas proceeding.

### C. Grounds Five through Eight are Procedurally Defaulted and Ground Nine is Without Merit.

In Grounds Five through Eight, petitioner alleges that the prosecution improperly withheld exculpatory evidence; that trial counsel provided ineffective assistance of counsel; that the prosecution's comments insinuating that petitioner was involved in a gang constituted prosecutorial misconduct; and that insufficient evidence was offered to support his conviction. (Doc. 1, pp. 16-18). In Ground Nine, petitioner contends that appellate counsel provided ineffective assistance by failing to raise the underlying claims raised in Grounds Five through Eight on appeal. *Id.* at 16.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to

prohibiting review of claims that are "not raised in the underlying appellate proceeding") (citing *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir. 1996)).

the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the default of a federal claim in the state court may preclude federal habeas review if the state court judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner fails to comply with a state procedural rule that required him to have done something at trial to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

16

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).[3] In cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

In addition, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24

---

[3] In *Harris,* the Supreme Court noted that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief. *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). The *Harris* Court further noted: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris,* 489 U.S. at 263 n.9.

(1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743,

751 (6th Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United*

*States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002

(6th Cir. 2009).  To be considered regularly followed, a procedural rule need not be applied in

every relevant case, but rather "[i]n the vast majority of cases."  *Dugger v. Adams,* 489 U.S. 401,

410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

    Finally, the state court's adequate and independent finding of procedural default will

preclude habeas corpus review of the petitioner's federal claims unless the petitioner can show

"cause" for the default and "actual prejudice" as a result of the alleged violations of federal law,

or that failure to consider the federal claims will result in a "fundamental miscarriage of justice."

*Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478,

485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87

(1977).

    In the instant case, petitioner failed to present the claims raised in Grounds Five through

Eight on direct appeal to the Ohio Court of Appeals.  Thus, petitioner procedurally defaulted the

claims asserted in these grounds for relief.  Ohio law provides that an issue not raised on direct

appeal is barred by the doctrine of *res judicata.  See State v. Perry*, 226 N.E.2d 104, 105-06

(Ohio 1967) (syllabus); *State v. Combs*, 652 N.E.2d 205, 209 (Ohio Ct. App. 1994) (holding that

*res judicata* stops post-conviction relief for claims that could have been raised on direct appeal).

The Sixth Circuit Court of Appeals has consistently recognized that under Ohio law an issue that

is not raised by a petitioner on direct appeal is subsequently barred from review based on the

doctrine of *res judicata.  See, e.g., Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998)

(recognizing procedural default of a claim in habeas petition where appellant never raised the claim on direct appeal to the Ohio Court of Appeals and the Ohio Supreme Court); *Rust,* 17 F.3d at 160-61 (finding adequate and independent state procedural rule where new claims raised in his second motion for leave to file a delayed direct appeal were barred by the Ohio Court of Appeals as *res judicata* because the petitioner had opportunity to raise constitutional claims during delayed direct appeal but failed to do so); *Leroy,* 757 F.2d at 100 (holding as adequate and independent state grounds the procedural default of claims raised for the first time in a petition for writ of habeas corpus on the basis of *res judicata* where petitioner failed to raise those claims in his direct appeal to the Ohio Court of Appeals and to the Ohio Supreme Court).

Although petitioner raised the underlying trial error claims in Grounds Five through Eight in connection with his Rule 26(B) application to reopen his direct appeal by asserting appellate counsel was ineffective for failing to bring the underlying claims as assignments of error, his Rule 26(B) application did not preserve the merits of those claims for habeas review. *See Davie v. Mitchell,* 547 F.3d 297, 312 (6th Cir. 2008). "[B]ringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'" *Id.* at 312 (quoting *White v. Mitchell,* 431 F.3d 517, 526 (6th Cir. 2005)). Consequently, by failing to raise the underlying trial error claims asserted in Grounds Five through Eight on direct appeal to the state courts, petitioner has waived the claims absent a showing of cause for his default and actual prejudice as a result of the alleged errors, or that the failure to consider the claims will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750. *See also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

In Ground Nine, petitioner argues that appellate counsel was ineffective for failing to raise the underlying claims asserted in Grounds Five through Eight. (Doc. 1, p. 16). Ineffective assistance of counsel can provide cause for a procedural default unless the ineffective assistance of appellate counsel claim was itself procedurally defaulted.[4] *See Murray,* 477 U.S. at 488-89. *See also Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). In order for the ineffective assistance of appellate counsel to serve as cause to excuse a procedural default petitioner must show that his appellate counsel's failure to raise the claims rose to the level of a constitutional violation under *Strickland v. Washington*, 466 U.S. 668 (1984). *McFarland v. Yukins,* 356 F.3d 688, 699 (6th Cir. 2004). Under *Strickland*, petitioner must demonstrate a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland*, 356 F.3d at 699. Accordingly, in evaluating the ineffective assistance of appellate counsel claim, the Court must assess the strength of the claims that appellate counsel failed to raise. *See Wilson v. Parker,* 515 F.3d 682, 707 (6th Cir. 2008). "If there is a reasonable probability that [the petitioner] would have prevailed on appeal had the claim been raised, we can then consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Id.* at 700.

In denying petitioner's application to reopen his appeal, the Ohio Court of Appeals ruled as follows:

---

[4] As noted above, petitioner did not appeal the denial of his 26(B) application to the Ohio Supreme Court. However, petitioner argues that he was not notified of the Ohio Court of Appeals' denial of his 26(B) application until after the expiration for appealing the decision to the Ohio Supreme Court. (Doc. 1, p. 16). Petitioner has included with his petition a letter from the Ohio Court of Appeals confirming that he was not notified of the appellate court's decision until August 26, 2010. *Id.* at 19. Accordingly, the Court will not consider petitioner's ineffective assistance of appellate counsel claims defaulted.

Appellant claims he was denied the effective assistance of appellate counsel because appellate counsel failed to raise issue of withholding of *Brady* material, trial counsel's performance at trial was ineffective, improper comments were made by the prosecutor, the evidence was insufficient for identification and appellate counsel failed to provide a transcript of sentencing on appeal.

An application of this nature shall be granted only if there is a genuine issue as to whether the applicant was deprived of the effective counsel on appeal. *State v. Tenace*, 109 Ohio St.3d 451, 2006-Ohio-2987, ¶5. See, also, App. R. 26(B)(5). As used in this analysis, ineffective assistance of counsel is intended to comprise the two elements set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, namely, a deficiency in the representation of appellant and prejudice resulting from such deficient representation. *Tenace*; *State v. Sheppard*, 91 Ohio St.3d 329, 2001-Ohio-52.

Appellant bears the burden of demonstrating a genuine issue as to whether he was denied the effective assistance of appellate counsel. *Tenace*, 2006-Ohio-2987 at ¶6, citing *State v. Spivey*, 84 Ohio St.3d 24, 25, 1998-Ohio-704, certiorari denied (1999), 526 U.S. 1091, 119 S.Ct. 1506; *State v. Myers*, 102 Ohio St.3d 318, 2004-Ohio-3075, ¶9.

Under *Strickland*, a court must apply a heavy measure of deference to counsel's judgments, and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Moreover, since the basis of appellant's claim is counsel's failure to raise certain issues on appeal, appellate counsel need not raise every possible issue in order to render constitutionally effective assistance. *State v. Burke*, 97 Ohio St.3d 55, 2002-Ohio-5310, ¶7. See *Jones v. Barnes* (1983), 463 U.S. 745, 103 S.Ct. 3308. See, also, *Tenace* at ¶9; and *Myers* at ¶10.

Appellant's arguments regarding *Brady* material, failure to make a Crim. R. 29 motion, failure to investigate and the transcript of sentencing are not supported by the record or refer to matters outside the record. Counsel was not ineffective for failing to raise the issue of identification as there was sufficient evidence of identification from the victim and issues of credibility are for the trial court. *State v. Fry*, __Ohio St.3d__, 2010-Ohio-1017, ¶ 146. Finally, trial counsel's representation did not rise to the level of ineffective assistance of counsel. *State v. Peoples* (1917), 28 Ohio App.2nd 162.

Counsel's failure to argue those issues appellant presents in his application does not raise a *genuine issue* as to whether counsel was ineffective since counsel is not required to present every imaginable issue on direct appeal. "To show ineffective assistance, [appellant] must prove that his counsel were deficient for

failing to raise the issues he now presents and that there was a reasonable probability of success had they presented those claims on appeal." *State v. Jalowiec*, 92 Ohio St.3d 421, 422, 2001-Ohio-164, certiorari denied, 534 U.S. 964, 122 S.Ct. 374.

Upon due consideration of the foregoing, and it appearing to the court that there is no genuine issue as to whether appellant was deprived of the effective assistance of counsel on appeal under App. R. 26(B)(5), appellant's application for reopening is hereby DENIED.

(Doc. 9, Ex. 17, pp. 2-4).

### i. Ground Five

In Ground Five, petitioner contends that the prosecutor withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. 1, p. 18). Specifically, petitioner argues that the "[p]rosecutor did not reveal that the gun in which the entire case centers around was found in possession of another African/American in a completely different jurisdiction with no relationship to the petitioner and most likely is the real perpetrator." *Id.*

To establish a *Brady* violation, the petitioner has the burden of demonstrating that (1) the prosecution suppressed evidence, either willfully or inadvertently; (2) the evidence is favorable to the accused, either because it is exculpatory or because it is impeaching; and (3) the suppressed evidence is material to guilt or punishment. *Moore v. Illinois,* 408 U.S. 786, 794-95 (1972); *see also Strickler v. Greene,* 527 U.S. 263, 281-82 (1999); *Brady,* 373 U.S. at 87; *Carter v. Bell,* 218 F.3d 581, 601 (6th Cir. 2000).

Evidence is "material" within the meaning of *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682 (1985); *see also Strickler,* 527 U.S. at 280 (citing *Kyles v. Whitley,* 514 U.S. 419 (1995)). "A 'reasonable

probability' is a probability sufficient to undermine confidence in the outcome" of the trial. *Bagley,* 473 U.S. at 682. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs,* 427 U.S. 97, 109-10 (1976). This standard for determining materiality focuses on the defendant's guilt or innocence, rather than on the impact of the undisclosed evidence on the defendant's ability to prepare for trial. *United States v. Phillip,* 948 F.2d 241, 249 (6th Cir. 1991) (citing *Agurs,* 427 U.S. at 112 n.20).

In this case, petitioner has failed to demonstrate that the evidence allegedly withheld by the prosecution was favorable to his case or that it is reasonably probable that the outcome of the trial would have been different had the evidence been disclosed. Petitioner has not shown how the fact that another individual was found in possession of the gun over a year after it was stolen was exculpatory, nor is the undersigned convinced that the evidence was material in light of the victim's eyewitness testimony that petitioner was the one who initially took it. Therefore, petitioner's underlying *Brady* claim is without merit.[5]

Because the Ohio Court of Appeals reasonably determined that the underlying *Brady* claim was without merit, the court was not unreasonable in finding that petitioner's appellate counsel was not ineffective for failing to raise the meritless claim. *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("if the underlying substantive claims have no merit, the applicant

---

[5] In addition, the record indicates that the prosecution informed the trial court of the location of the weapon prior to sentencing:

> [Prosecutor]: I would like the Court to know, Detective Weissenger brought to my attention just a side note. The gun that was stolen in this case has been retrieved in Cincinnati. The person from whom it was taken has been charged with receiving stolen property but has not been cooperative in identifying the source from which he received the gun.

(Doc. 9, Motion for New Trial and Disposition Hearing Transcript p. 12).

cannot demonstrate that counsel was ineffective for failing to raise those claims on appeal.");

*Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) ("appellate counsel cannot be ineffective for failure to raise an issue that lacks merit.") (citation omitted). Accordingly, petitioner has not established cause for his procedural default of the underlying *Brady* claim alleged in Ground Five on habeas review, or that the state appellate court's rejection of petitioner's ineffective assistance of appellate counsel claim (raised as an independent claim in Ground Nine of the petition) was contrary to or an unreasonable application of federal law under § 2254(d).

### ii.    *Ground Six*

In Ground Six, petitioner contends that trial counsel rendered ineffective assistance of counsel. He argues that "[t]rial counsel admitted he was inexperienced, failed to object to improper comments, failed to make Rule 29 motion for acquittal, failed to investigate exculpatory evidence, failed to object to a picture of a gun as evidence or to investigate what happened to the real gun." (Doc. 1, p. 18). Through counsel, petitioner also argues that "trial counsel did not effectively expose the identification issue, rendering ineffective assistance." (Doc. 13, p. 2).

In order to demonstrate that trial counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland,* 466 U.S. at 687. Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. "A court considering a claim of ineffective assistance must

apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington,* 131 S.Ct. at 787 (citing *Strickland*, 466 U.S. at 689). Under the prejudice prong of the *Strickland* test, petitioner must show "a reasonable probability that, but for his counsel's unprofessional errors, the result of the criminal proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *Id.* (citing *Strickland,* 466 U.S. at 694). A court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground. 466 U.S. at 697.

Petitioner's ineffective assistance of trial counsel claims are without merit. First, as to petitioner's contention that his trial counsel was inexperienced, this claim alone does not suffice to state a claim of ineffective assistance of counsel. *See United States v. Cronic*, 466 U.S. 648, 665 (1984) (finding that a petitioner must point to specific errors in counsel's performance) *overruled on other grounds by Sawyer v. Smith,* 497 U.S. 227 (1990).

With regard to his claim that counsel was ineffective for failing to object to improper comments, petitioner does not specify which comments trial counsel should have objected to. However, in Ground Seven of the petition, petitioner contends that the prosecutor improperly insinuated that petitioner was involved in gang activity. As discussed below in addressing Ground Seven, the prosecution never insinuated that petitioner was involved in gang activity. Therefore, counsel was not ineffective for failing to raise the meritless objection.

As to petitioner's claim that trial counsel was ineffective for failure to make Rule 29 motion for acquittal, the record also belies this claim. Counsel made a Rule 29 motion during a bench conference at the close of the prosecution's case. (*See* Doc. 9, Transcript p. 190). Trial

25

counsel also renewed the motion prior to closing statements. *Id.* at 267. Therefore, petitioner's claim is without merit.

Petitioner next argues that trial counsel was ineffective for failure to investigate exculpatory evidence. Although petitioner does not indicate what evidence counsel should have investigated in the petition, in his application to reopen his appeal petitioner also argued that trial counsel was ineffective because counsel "[f]ailed to investigate exculpatory evidence which would have proved the appellant not guilty." (Doc. 9, Ex. 15, p. 3). According to petitioner, the victim told the police that the suspect had neck and hand tattoos. Petitioner claimed that he had receipts which proved that he did not have his tattoos at the time of the incident. *Id.*

The undersigned agrees with the Ohio Court of Appeals, that petitioner's claim is without merit. The state appellate court found that petitioner's claim was either not supported by the record or referred to matters outside the record. On federal habeas review the Court is limited to the record before the state court. *Cullen v. Pinholster*, __U.S.__, 131 S.Ct. 1388, 1398 (2011). In this case, the victim's testimony includes no mention of the suspect having tattoos. (*See* Doc.9, Transcript pp. 62, 101-102, 146-47), nor does the record otherwise support petitioner's claim that the victim described the assailant as having tattoos. Holly Adams, testified that she observed petitioner at one of the victim's yard sales and indicated that he had a tattoo on his neck. *Id.* at 119-20, 131. However, Adams' testimony was only relevant in establishing that petitioner was present at a yard sale prior to the incident. This was a point petitioner did not

contest and, therefore, would not have altered the outcome of the trial.  *See id.* at 275, 232, 237, 243.[6]

Petitioner also contends that trial counsel was ineffective for failing "to object to a picture of a gun as evidence or investigate what happened to the real gun."  (Doc. 1, p. 18).  Petitioner does not indicate on what ground the attorney would have objected to the picture, nor advanced any argument as to how he was prejudiced by the picture or trial counsel's failure to investigate the location of the gun.  Accordingly, his claim is without merit.

Finally, petitioner argues that trial counsel was ineffective for failing to properly raise the issue of misidentification at trial.   Petitioner contends that "trial counsel never highlighted to the jury that although the victim properly identified the petitioner as the person that was at her house on two occasions, she mistakenly identified him as the same person that assaulted her later." (Doc. 13, p. 4).  Petitioner argues that counsel undermined his defense by "question[ing] the victim in a way that suggested that the defense was that the petitioner never attended the yard or porch sale."  *Id.*  Noting that he testified that he was present at the yard sales, petitioner contends that questioning the victim in that manner helped support the state's case.  *Id.*

Petitioner's argument is unavailing.  Trial counsel argued that the case against petitioner was "a case of mistaken identity."  (Doc. 9, Transcript p. 27).  In addition to presenting testimony that petitioner was at a family birthday party at the time of the incident, counsel

---

[6] Furthermore, trial counsel did elicit testimony regarding petitioner's tattoos.  Petitioner's mother testified that she gave him the money for the tattoo on his birthday, (Doc. 9, Transcript pp. 197-98) and petitioner testified that he got the tattoo after the incident, in March of 2008.  *Id.* at 230.  On cross examination, petitioner indicated that he saw the tattoo artist in a McDonalds the day prior to his testimony and that he had a written statement from her.  *Id.* at 244-46.   It appears that trial counsel attempted to question petitioner about the document on re-direct, however the trial judge ruled that "[t]hat document can't come in."  *See id.* at 251-52.

emphasized that the only evidence linking petitioner to the assault came from the victim, Ms. Eldridge. *Id.* at 281. The remaining witness testimony, counsel argued, pertained to tangential matters including Ms. Adams' testimony that she saw petitioner at one of Ms. Eldridge's yard sales. *See id.* at 282. Counsel presented the defense that Ms. Eldridge's identification of petitioner was the result of having seen petitioner in an initial photo lineup. He argued that despite the fact that petitioner was wearing clothing that conformed to the victim's description of the assailant in the photograph, that the victim did not initially identify petitioner as the attacker. *Id.* at 285-86. Counsel contended that in identifying petitioner in a second photo lineup two weeks later, the victim simply recognized petitioner from the first photo lineup.[7] *Id.* at 286. In addition, counsel pointed out that neither petitioner's voice nor the vehicle he had access to matched the description offered by the victim. *Id.* at 284-86.

After review of the record, the Court finds that the Ohio Court of Appeals reasonably determined that petitioner's ineffective assistance of counsel claims were without merit. Counsel did not provide ineffective assistance under the *Strickland* standard, nor does the record permit the conclusion that the alleged errors altered the outcome of the proceeding in light of the victim's eyewitness testimony.

Because the underlying ineffective assistance of counsel claims are without merit, the Ohio Court of Appeals reasonably determined that appellate counsel was not ineffective for failing to raise these errors on appeal. Accordingly, petitioner has not established cause for his

---

[7] Counsel argued: "Now, she knows when she looks at this picture that she's seen that person before. That's true she had seen that person in a picture two weeks earlier. Now, if any of you have ever played the card game Memory, where you look at one picture and then you try and find the picture that matches it, is that a case of what we have here? Do we have Ms. Eldridge remembering a picture she saw two weeks earlier and then seeing another one and saying I know that individual." (Doc. 9, Transcript pp. 285-86).

procedural default of the underlying ineffective assistance of trial counsel claims raised in Ground Six, or that the state appellate court's rejection of petitioner's ineffective assistance of appellate counsel claim was contrary to or an unreasonable application of federal law under § 2254(d).

### iii.    *Ground Seven*

In Ground Seven, petitioner claims that the prosecutor improperly made comments insinuating that petitioner was involved in a gang. He contends that such comments rose to the level of a due process violation "since these comments were specifically aimed at prejudicing the petitioner in the eyes of the jury and it was not proven he if at all was involved or associated with this alleged gang." (Doc. 1, p. 17).

The undersigned finds Ground Seven without merit. As respondent has pointed out in the return of writ, the prosecution did not insinuate that petitioner was involved in gang activity. (*See* Doc. 9, pp. 52-53). During trial, Detective Weissinger testified that the victim provided him with a license plate of a vehicle believed to have been driven by the assailant. Weissenger testified that the plate number was registered to a white Dodge Caravan belonging to Jennifer Daily. He further testified that he believed Jennifer Daily's son, Joshua Daily, was a good suspect based on his criminal record, trafficking in drugs and gang membership:

> Q: And in the Hamilton Police department do you have a data base, which would reflect associated persons to a – for instance Jennifer Daily?
>
> A: Yes.
>
> Q: And did you come back with – what associations did Jennifer Daily have that the Hamilton Police Department were aware of?

A: Well, I know a Jennifer Daily.  I also know her son, Joshua Daily.  When that name came up, I thought at that time I had a pretty good suspect.

Q: And why is that?

A: With his criminal record, trafficking in drugs.  In 2006 he was – he claimed to be a gang member of the D-Block Killas.  So that kind of ended his – activity brought my attention to it.

(Doc. 9, Transcript pp. 148-50).  The prosecution made no other comment either directly or implicitly suggesting that petitioner was involved in gang activities.  Accordingly, the undersigned finds that the record does not support petitioner's claim that the prosecution impermissibly insinuated that petitioner was involved in a gang.  Therefore, Ground Seven is without merit.

Because petitioner's underlying prosecutorial misconduct claim is without merit, the Ohio Court of Appeals reasonably determined that appellate counsel was not ineffective for failing to raise the error on appeal.  Accordingly, petitioner has not established cause for his procedural default of the underlying prosecutorial misconduct claim raised in Ground Seven, or that the state appellate court's rejection of petitioner's ineffective assistance of appellate counsel claim was contrary to or an unreasonable application of federal law under § 2254(d).

### iv.      *Ground Eight*

In Ground Eight, petitioner contends that there was insufficient evidence to support his convictions.  (Doc. 1, p. 17).  Petitioner bases his sufficiency of evidence ground for relief on the fact that "[t]he alleged victim could not identify the petitioner in a 'Drive by' ID, a Photo line-up or at any time prior to trial when the petitioner was sitting in the Defendant's chair."  (Doc. 1, p.

17).  He further contends that no actual evidence exists to support his conviction and that the lead detective failed to investigate "another good suspect."  *Id.*

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged.  *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship,* 397 U.S. 358, 364 (1970).  In analyzing claims of insufficient evidence, the Court must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319 (emphasis in original).  This standard reserves to the trier of fact the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts.  *Id.* at 318-319.

On habeas corpus review, the Court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court."  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim."  *Id*. at 189-99.  In addition, circumstantial evidence may be sufficient to support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.  *See Jackson,* 443 U.S. at 326; *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995); *Jamison v. Collins,* 100 F. Supp.2d 647, 705 (S.D. Ohio 2000), *aff'd*, 291 F.3d 380 (6th Cir. 2002).

After review of the record in this case, the Court finds that petitioner's sufficiency of the evidence claim is without merit.  Contrary to petitioner's claim that no actual evidence was

offered against him, the victim directly testified that petitioner was the individual who entered her home, took the gun from her and struck her in the head multiple times. (Doc. 9, Transcript pp. 53-60). The victim testified that she recognized petitioner from prior yard sales and recalled that during one sale, petitioner conversed with her father about a firearm owned by her husband. *Id.* at 42. She stated that upon returning to her home on the day of the incident, that petitioner inquired if the gun was still for sale or if she had any other firearms she would sell. *Id.* at 45. The victim further testified that the only reason she agreed to show petitioner the stolen firearm in the first place was because of her prior interactions with him. *Id.* at 46-47.

Although, as petitioner argues, the victim was unable to identify petitioner in an initial photo line-up, she subsequently identified petitioner on three occasions. First, she identified petitioner in a second photo line-up, testifying that at that time she was 95% sure that he was the man who assaulted her. *Id.* at 70-71. Second, the victim testified that she recognized petitioner at a preliminary hearing when petitioner sat two benches in front of her. She testified that petitioner turned around to look at her and grinned at her twice. She also indicated that petitioner was with a female who also was with him at the first yard sale. *Id.* at 74-75. Finally, the victim identified petitioner at trial, stating that she was 100% sure that he was the individual who assaulted her. *Id.* at 75.

Viewing the evidence in the light most favorable to the prosecution, the Court finds that sufficient evidence existed to support petitioner's convictions. Although petitioner offered testimony to suggest that he was at a birthday party with his family at the time of the incident, the jury apparently credited the testimony offered by the prosecution. As noted above, it is not the province of this Court to reweigh the evidence or re-determine the credibility of witnesses.

32

After a careful review of the record, the undersigned is convinced that a rational fact finder could find have found the essential elements of the crime beyond a reasonable doubt.

Because petitioner's underlying sufficiency of evidence claim is without merit, the Ohio Court of Appeals reasonably determined that appellate counsel was not ineffective for failing to raise the error on appeal. Accordingly, petitioner has not established cause for his procedural default of the underlying sufficiency of evidence claim raised in Ground Eight, or that the state appellate court's rejection of petitioner's ineffective assistance of appellate counsel claim was contrary to or an unreasonable application of federal law under § 2254(d).

Accordingly, in sum, the Court concludes that Ground One of the petition is not cognizable in federal habeas corpus. Petitioner has procedurally defaulted his claims for relief in Grounds Two, Three and Four by failing to fairly present the constitutional claims to the Ohio courts. Because petitioner has not demonstrated "cause" for his procedural defaults or that a fundamental miscarriage of justice will occur if his claims are not considered by this Court, the undersigned concludes that petitioner has waived his claims for federal habeas relief. Petitioner has also procedurally defaulted Grounds Five, Six, Seven and Eight by failing to present the independent claims on direct appeal or on further review with the Ohio Supreme Court. Finally, petitioner's freestanding ineffective assistance of appellate counsel claim asserted in Ground Nine is without merit and does not constitute cause for the procedural default of Grounds Five through Eight. Therefore, it is **RECOMMENDED** that petitioner's petition for writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in Grounds Two, Three, Four, Five, Six, Seven and Eight, which this Court has concluded are waived and thus barred from review on a procedural ground, because "jurists of reason would not find it debatable as to whether this Court is correct in its procedural ruling" under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000).[8]

3. A certificate of appealability should not issue with respect to any other claims alleged in the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

4. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:    October 5, 2012

s/ J. Gregory Wehrman
_____
J. Gregory Wehrman
United States Magistrate Judge

---

[8] Because this Court finds that the first prong of the *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of his grounds for relief. *See Slack*, 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

SAMUEL WEAVER,                                    Case No. 1:11-cv-218
      Petitioner,

                                          Barrett, J.

      vs.                                    Wehrman, M.J.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,
      Respondent.


Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).